<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TYRONE BROWN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 02-5591 (MLC) |
| | : | |
| MONMOUTH COUNTY SHERIFF'S | : | **MEMORANDUM OPINION** |
| DEPARTMENT OF CORRECTIONS & | : | |
| MEDICAL DEPARTMENT, et al., | : | |
| | : | |
| Defendants. | : | |

<u>**COOPER, District Judge**</u>

This matter comes before the Court on the motion for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56(c), by defendant County of Monmouth, improperly pleaded as Monmouth County Sheriff's Department of Corrections and Medical Department, ("Monmouth County").  The Court, for the reasons stated herein, will be grant the motion.

<u>**BACKGROUND**</u>

I.   <u>**Facts**</u>

Plaintiff <u>pro se</u>, Tyrone Brown, while incarcerated at the Monmouth County Correctional Institute ("MCCI"), was struck on the head by a weight bar as he used a bench press, allegedly made by Universal Fitness, Inc. ("Universal"), in MCCI's weight room on October 30, 2002 ("the initial incident").  (Monmouth County Br. at 1.)  Plaintiff contends that the weight bar fell on his head because a bolt, that had been replaced by Monmouth County

with a non-factory bolt, broke. (Pl. Br. at 1-2.) Plaintiff claims to have lost consciousness. (Id.) Monmouth County, however, contends plaintiff denied losing consciousness when asked by medical personnel at the scene of the initial incident. (Monmouth County Br. at 2.) Plaintiff claims that he suffered permanent injury as a result of the incident, specifically that his senses of smell and taste are distorted, he suffers from chronic back pain, and his right knee pops out of place with fast movements.[1] (Jones Cert., Ex. A, Interrogatories, at 5.)

Plaintiff was taken to the MCCI infirmary immediately following the initial incident where he was examined by, at the very least, licensed nurse R. Condora. (Monmouth County Br. at 2.) Plaintiff contends that he was not evaluated by a doctor, but rather only by Nurse Condora. (Pl. Br. at 3.) Monmouth County claims that plaintiff was examined after the initial incident by Doctor Y. Masood. (Monmouth County Br. at 3.) Monmouth County cites treatment notes in support of this contention, which indicate that Doctor Masood examined plaintiff and found that he was oriented, his overall appearance was appropriate, that there was no bruising, lacerations, erythema, or neurological defect, and minimal swelling. (Id. (citing Jones Cert., Ex. L, 10-30-02

---

[1] Plaintiff complained of a knee injury, prior to this incident, when he was examined by Doctor Masood on September 19, 2002. (Jones Cert., Ex. B, 9-19-02 Treatment Notes.) Doctor Masood observed no bruising, lacerations, swelling or tenderness, or significant injury. (Id.)

Masood Treatment Notes).)  Plaintiff was prescribed ibuprofen and released back to the general population.  (Id.)

MCCI infirmary personnel received a call that same afternoon indicating that plaintiff had fallen down the stairs in his pod ("the second incident").  (Jones Cert., Ex. N., 10-30-02 Marion Bibby, RN Treatment Notes relating to the second incident.)  When medical personnel arrived at the scene plaintiff was observed lying prone on the floor at the foot of the staircase with his arms and legs spread out and his feet resting on the bottom two stairs.  (Id.)  Plaintiff was "alert [and] responsive, but holding [his] eyelids closed tightly most of the time."  (Id.)  Plaintiff was able to open his eyes on command and move his arms, fingers, and legs at times, but remained motionless in the same position for approximately thirty minutes until the first aid squad arrived.  (Id.)  Treatment notes indicate that there was no flaccidity nor evidence of abrasions, lacerations, bruises, redness, lumps, or deformities.  (Id.)  Plaintiff was immobilized and transported to Centra State Medical Center ("CSMC") for further examination.  (Id.)

The MCCI infirmary received a call at 9pm on October 30, 2002 from an emergency room nurse at CSMC indicating that plaintiff was being released back to MCCI.  (Jones Cert., Ex. O, 10-30-02 Bibby Treatment Notes relating to plaintiff's return from CSMC.)  MCCI infirmary nurse, Marion Bibby, was told by a CSMC nurse that a CT scan was performed and was negative and that

plaintiff was ambulatory.  (Id.)  MCCI was advised that plaintiff should continue taking Motrin and follow up with an orthopedist but that special housing was unnecessary.  (Id.)  Plaintiff, upon his return to MCCI, was observed to be ambulatory and in good spirits and was given priority for a bottom bunk and an ice pack for comfort.  (Id.)

Plaintiff was examined in the infirmary on October 31, 2002 by advanced practice nurse Pamela Duke.  (Jones Cert., Ex. P, 10-31-02 Treatment Notes.)  Plaintiff complained of seeing "little flashes of light in both eyes," headaches, an inability to taste his food, and neck and lower back pain.  (Id.)  Plaintiff also complained of pain when he touched his chin to his chest.  (Id.)  Plaintiff was observed to have full range of motion otherwise. (Id.)  Plaintiff also was observed to have "superficial scratches" on his forehead.  (Id.)  Advanced practice nurse Duke noted that plaintiff's symptoms did "not match [his] injury and physical exam."  (Id.)  Plaintiff was given Motrin and told to perform gentle range of motion exercises for his neck and back.  (Id.)

Plaintiff was examined by advanced practice nurse Albert Endler on November 1, 2002.  (Jones Cert., Ex. Q, 11-1-02 Treatment Notes.)  Plaintiff complained of headaches, joint stiffness and insomnia, secondary to neck and back pain.  (Id.)  Plaintiff's neck appeared normal but range of motion of the neck revealed pain.  (Id.)  Plaintiff was prescribed Benedryl for sleep.  (Id.)

4

Plaintiff complained of back pain and dizziness when he was examined by Doctor Masood on November 5, 2002. (Jones Cert., Ex. R, 11-5-02 Treatment Notes.) Doctor Masood's examination revealed that plaintiff was oriented and had an appropriate overall appearance. (Id.) Doctor Masood noted that plaintiff had an atraumtic normal cranium and did not have lesions on his head or face. (Id.) The doctor also noted that plaintiff's pupils were equally round and reacted to light. (Id.) Plaintiff's neck was normal, non-tender, and had full range of motion. (Id.) Doctor Masood assessed plaintiff as having a well exam and back muscle spasm. (Id.) Doctor Masood further commented: "No physical signs of injury, was examined at CSMC ER, for this 'fall', all work up, [x-rays] negative." (Id.) It was also noted that plaintiff wanted to be in the infirmary and a back and neck brace. (Id.)

Plaintiff complained of dizziness and was examined by Doctor Edmund Preston on November 12, 2002. (Jones Cert., Ex. S, 11-12-02 Treatment Notes.) Doctor Preston's examination of plaintiff revealed that plaintiff was oriented and had an overall appropriate appearance. (Id.) Plaintiff's pupils were equally round and reacted to light. (Id.) Plaintiff's neck was normal, non-tender, and had full range of motion. (Id.) Doctor Preston assessed plaintiff as having a backache and dizziness. (Id.) The doctor prescribed Motrin and Flexeril. (Id.)

Plaintiff continued to complain of dizziness on November 21, 2002. (Jones Cert., Ex. T, 11-21-02 Treatment notes.) Plaintiff was examined by advance practice nurse Endler on that day and found to have decreased lumbar mobility and tenderness upon palpation of the lumbar musculature. (Id.) Plaintiff was assessed as having dizziness and a loss of taste sensation. (Id.) Advance practice nurse Endler recommended that plaintiff's Flexeril prescription be allowed to expire, as it was potentially attributing to plaintiff's dizziness. (Id.)

Michael Feldler, MA attempted to interview plaintiff on November 23, 2002. (Jones Cert., Ex. U, 11-23-02 Feldler Notes.) Plaintiff however indicated that he had no mental health issues. (Id.) Plaintiff was prescribed ibuprofen and advised to continue his current plan by advanced practice nurse Mary C. Krug on an November 27, 2002 followup visit. (Jones Cert., Ex. V, 11-27-02 Treatment Notes.) Plaintiff went to the MCCI infirmary on December 9, 2002 complaining of a backache and was examined by Doctor Masood. (Jones Cert., Ex. W, 12-9-02 Treatment Notes.) The doctor found that Plaintiff's back was not tender with palpation but found that plaintiff had limited range of motion with any movement and was ambulating stiffly with a cane. (Id.) Doctor Masood prescribed Naprosyn and noted that plaintiff was given a sheet of back exercises at his last visit. (Id.) Plaintiff has not had any further medical treatment since December 9, 2002. (Monmouth County Br. at 7.)

6

## II.  **Procedural History**

Plaintiff filed a complaint against Monmouth County in this Court on November 22, 2002.  The Court entered its opinion, on March 11, 2003, finding that the complaint failed to state a claim.  The Court, therefore, granted plaintiff leave to file an amended complaint.  Plaintiff filed an amended complaint against Monmouth County on April 29, 2003.  The Court, in a May 27, 2003 order, dismissed the complaint with prejudice because the amended complaint failed to address the deficiencies described in the Court's March 11, 2003 opinion.  Plaintiff moved for reconsideration on July 9, 2003.  The Court granted plaintiff's motion for reconsideration and ordered that its May 27, 2003 order dismissing the complaint with prejudice be vacated on September 5, 2003.

Plaintiff filed a second amended complaint, which was received by the Clerk's Office on September 28, 2004, asserting claims against Monmouth County and Universal.  The complaint alleges that Monmouth County's conscious act of using the wrong replacement bolt to replace a factory part and failing to provide adequate exercise equipment constitutes deliberate indifference to the conditions of plaintiff's confinement in violation of the Eighth Amendment to the United States Constitution.  (Id. at 1.) Plaintiff also contends that Monmouth County was deliberately indifferent to his medical condition because "more should have

been done by way of diagnosis and treatment" after he sustained a head injury.  (Id. at 1-2.)  Plaintiff specially contends that he should have been put under observation for a few hours after the initial incident and that he was not seen by a doctor after that incident.  (Id.)  Plaintiff, rather, asserts that he was treated "by someone who [was not] qualified to treat and deliver appropriate care which caused [him] to suffer and in [turn] caused another incident, which worsened his condition."  (Id. at 2.)

Plaintiff asserts claims against Universal alleging that it is the manufacturer or seller of the weight lifting machine, Paramount ST-4 Multi-Station Gym, Cty, D.F. Mon. # 63920, which he was using when he sustained a head injury.  (Id. at 3.) Plaintiff, therefore, alleges that Universal is strictly liable for his injuries caused by a defect in the machine.  (Id.) Plaintiff also contends that Universal's production and sale of an unfit, unsafe product used in a county or state facility constitutes deliberate indifference in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and violates his rights to equal protection and due process of law under the Fourteenth Amendment.  (Id.)

Universal answered the amended complaint and cross-claimed against Monmouth County for contribution and indemnification on November 22, 2004.  Monmouth County moved for summary judgment on September 22, 2004 as to claims asserted against it by

8

plaintiff.[2]  Plaintiff and Universal both oppose the motion.
Plaintiff contends that genuine material issues of fact exist
that should be considered by a jury.  (Pl. Br. at 1.)  Universal
asserts that summary judgment is inappropriate because discovery
is not yet complete and there exist genuine issues of material
fact. (Universal Br. at 7-9.)  Universal specifically contends
that MCCI has yet to produce evidence that: (1) the weight
lifting machine at issue was purchased by MCCI from Universal;
(2) Universal negligently serviced or maintained the machine at
issue; or (3) MCCI "did not repair, alter or otherwise change the
equipment used by plaintiff at the time of the accident."  (Id.
at 5-6.)  Monmouth County, in its reply brief, admitted that:
(1) MCCI did not purchase the weight lifting machine in question
from Universal; (2) it "does not contend that Universal
negligently serviced and/or maintained the equipment used by
plaintiff at the time of the accident"; and (3) it "has not
produced documentation that would indicate that [it] did not
repair, alter or otherwise change the equipment used by plaintiff

---

[2]  Monmouth County asserts in its reply brief that "[a]s a
matter of law, there is no liability of Defendant, Monmouth County,
as to co-defendant [Universal's] cross-claims for contribution and
indemnification under state law . . . ."  (Monmouth County Reply
Br. at 2.)  To the extent that Monmouth County appears to argue
that summary judgment should be granted as to Universal's cross-
claims we will not consider such arguments raised for the first
time in a reply.  See Reap v. Cont'l Cas. Co., 199 F.R.D. 536,
550 (D.N.J. 2001); United States v. Medeiros, 710 F.Supp. 106,
110 (M.D. Pa.), aff'd, 884 F.2d 75 (3d Cir. 1989).

at the time of the accident." (Monmouth County Reply Br. at 1-2.)

**DISCUSSION**

**I.   Standard for Summary Judgment**

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the summary judgment movant has met this prima facie burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A nonmovant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Under this standard the

10

"mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

## II.  **Analysis**

To recover against a defendant under 42 U.S.C. § ("Section") 1983 a plaintiff must establish that the defendant acted under color of state law to deprive him of a right secured by the federal Constitution or laws. Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

11

For plaintiff's claim to survive Monmouth County's <u>prima</u> <u>facie</u> showing of entitlement to summary judgment, there must be a genuine issue of fact as to whether Monmouth County (1) acted under color of state law; and (2) deprived plaintiff of a federal right. <u>Groman</u>, 47 F.3d at 633.  "The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." <u>Id.</u> at 638.  The color of state law element requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State."  <u>Lugar v. Edmonson Oil Co.</u>, 457 U.S. 922, 937 (1982).

Officials, hence, may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility. However, supervisory liability may not be premised solely on a theory of <u>respondeat</u> <u>superior</u>.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  Some sort of personal involvement, rather, must be alleged.  <u>Id.</u>  Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior. <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 & n.3 (3d Cir. 1995). There is no dispute that Monmouth County personnel acted in their official capacities under the color of state law.

The first inquiry in a Section 1983 action is to identify "the specific constitutional right allegedly infringed by the [defendants]." Graham v. Connor, 490 U.S. 386, 394 (1989). The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. Id. at 9. The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Wilson, 501 U.S. at 303.

A.    Deliberate Indifference to Conditions-of-Confinement

"[I]t is well settled that the treatment a prisoner receives in prison and the conditions under which he is confined are

13

subject to scrutiny under the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).

A prisoner may satisfy the objective element of a conditions-of-confinement claim, that a deprivation be "sufficiently serious", if he can show that the conditions alleged, either "alone or in combination, . . . deprive him of the minimal civilized measure of life's necessities." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347-48 (1981).  Such necessities include: "adequate food, clothing, shelter, sanitation, medical care, and personal safety." <u>Young v. Quinlan</u>, 960 F.2d 351, 364 (3d Cir. 1992).  "The Constitution does not mandate comfortable prisons," however.  <u>Rhodes</u>, 452 U.S. at 349.

A plaintiff may fulfill the subjective element of a conditions-of-confinement claim by demonstrating that prison officials were deliberately indifferent to the plaintiff's health or safety. <u>Farmer</u>, 511 U.S. at 834.  The deliberate indifference standard, therefore, requires more than mere negligence or ordinary lack of due care for a prisoner's safety.  <u>Id.</u> at 835. The deliberate indifference standard, rather, is the equivalent of recklessness.  <u>Id.</u> at 836.  To be liable for deliberate indifference, prison officials must both know of and disregard an excessive risk to an inmate's health or safety.  <u>Id.</u>  The actual knowledge requirement of the deliberate indifference standard for prison condition claims requires that officials "actually be aware of the existence of the excessive risk; it is not

14

sufficient that the official should have been aware." Beers-
Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). "[A]n
official's failure to alleviate a significant risk that he should
have perceived but did not, while no cause for commendation,
cannot . . . be condemned as the infliction of punishment."
Farmer, 511 U.S. at 838.

A defendant's knowledge of a risk may be proved indirectly
by circumstantial evidence. Beers-Capitol, 256 F.3d at 131.
"[A] factfinder may conclude that a prison official knew of a
substantial risk from the very fact that the risk was obvious."
Id. A risk is obvious where a reasonable person would perceive a
risk. Id. A plaintiff may demonstrate deliberate indifference
by showing that prison officials simply were aware of a general
risk to inmates in plaintiff's situation. Id.

> [I]f an Eighth Amendment plaintiff presents
> evidence showing that a substantial risk of
> inmate attacks was longstanding, pervasive,
> well-documented, or expressly noted by prison
> officials in the past, and the circumstances
> suggest that the defendant-official being
> sued had been exposed to information
> concerning the risk and thus must have known
> about it, then such evidence could be
> sufficient to permit a trier of fact to find
> that the defendant-official had actual
> knowledge of the risk.

Beers-Capitol, 256 F.3d at 131 (citing Farmer, 511 U.S. at 842-43).

A plaintiff, to defeat a summary judgment motion, "must
present enough evidence to support the inference that [a

15

defendant] knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132 (quotations omitted). Plaintiff, in response to Monmouth County's prima facie showing, has failed to present such evidence.  Plaintiff has, considering the evidence in the light most favorable to him, presented evidence from which a reasonable jury could conclude that depriving him of his right to exercise safely without risk of injury is "sufficiently serious" to satisfy the objective element of a conditions-of-confinement claim.  See Wilson, 501 U.S. at 304 (noting that exercise is among the human needs prisoners are entitled to under the Eighth Amendment); Young, 960 F.2d at 364 (noting that the Eighth Amendment obligates a prison to provide a prisoner adequate personal safety).

Plaintiff has failed, however, to rebut a prima facie showing that Monmouth County had no actual knowledge of a risk to his safety while exercising.  Plaintiff has failed to show, in particular, that Monmouth County: (1) knew of long-standing substandard conditions associated with MCCI's exercise equipment, and in particular the bench press; (2) received complaints about the bench press malfunctioning because of a bolt breaking; (3) knew of prior accidents; or (4) knew of a general risk to prisoners in plaintiff's position such that the risk of injury was obvious.  Plaintiff, at most, alleges that Monmouth County was negligent in its alleged repair of the bench press.  This alleged negligence does not rise to the level of deliberate

indifference.  The Court, after drawing all inferences in favor of plaintiff, thus holds that the evidence in the summary judgment record fails, as a matter of law, to demonstrate the type of deliberate indifference necessary to establish a conditions-of-confinement claim under the Eighth Amendment.

B.    Deliberate Indifference to Medical Needs

Plaintiff alleges that Monmouth County violated his Eighth Amendment right to be free from cruel and unusual punishment because MCCI medical personnel were deliberately indifferent to his serious medical needs.  Plaintiff specifically contends that his failure to be seen by a doctor, a competent, diligent medical professional, after the initial incident constitutes deliberate indifference.  (Am. Compl. at 3.)  Monmouth County asserts, citing to plaintiff's infirmary treatment notes, that plaintiff was evaluated by a medical doctor after the initial incident. (Monmouth County Br. at 3 (citing Jones Cert., Ex. L, 10-30-02 Masood Treatment Notes).)  There, hence, exists a disputed issue of fact.  We hold, however, that this issue of fact is immaterial because, even assuming plaintiff's factual allegation that he was not seen by a doctor to be true, plaintiff's allegations do not rise to the level of deliberate indifference.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04

17

(1976).  To succeed on an Eighth Amendment medical-care claim, an inmate must demonstrate that: (1) he has a serious medical need and (2) prison officials were deliberately indifferent to his medical needs.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (quotations omitted).  "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."  Id.

Deliberate indifference to a serious medical condition occurs where the prison official "knows the inmates face a substantial risk of serious harm and [consciously] disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 837.  Examples include "situations where there was objective evidence that a plaintiff had serious need for medical care, and prison officials ignored that evidence" and "where necessary medical treatment is delayed for non-medical reasons."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quotations omitted).  Not every complaint by a prisoner concerning the adequacy of medical care, however, constitutes a violation of the Eighth Amendment.  White v.

18

Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).  The deliberate
indifference standard, in fact, is unquestionably a high standard
for a prisoner to meet.  See generally Estelle, 429 U.S. at 105-
06.  An unwitting failure to provide adequate medical care, a
negligent diagnosis or treatment, or even medical malpractice,
does not support a valid claim under the Eighth Amendment.  Id.
("[A] complaint that a physician has been negligent in diagnosing
or treating a medical condition does not state a valid claim of
medical mistreatment under the Eighth Amendment."); White, 897
F.2d at 108 ("Mere medical malpractice cannot give rise to a
violation of the Eighth Amendment.").  Rather, "[i]n order to
succeed in an action claiming inadequate medical treatment, a
prisoner must show more than negligence; he must show 'deliberate
indifference' to a serious medical need."[3]  Durmer v. O'Carroll,
991 F.2d 64, 67 (3d Cir. 1993).

Viewing the evidence in a manner most favorable to
plaintiff, a reasonable jury could find that his alleged
injuries, distorted senses of smell and taste, chronic back pain,

---

[3]  The "deliberate indifference" must also be "repugnant to
the conscience of mankind[,]" Estelle, 429 U.S. at 105-06, as
cases involving doctors' liability demonstrate.  See, e.g.,
Williams v. Vincent, 508 F.2d 541, 543 (2d Cir. 1974) (involving
doctors' choosing easier but less efficacious "treatment" of
throwing away prisoner's ear and stitching stump rather than
attempting to reattach ear); Jones v. Lockhart, 484 F.2d 1192,
1193 (8th Cir. 1973) (involving doctor's refusal to administer
prescribed painkiller and causing surgery to be unsuccessful by
requiring prisoner to stand on injured leg despite surgeon's
instructions).

and his knee popping out of place with fast movements, constitute a serious medical condition because of the permanent loss and life-long handicap associated with these alleged injuries.  <u>See Lanzaro</u>, 834 F.2d at 347.

The issue, therefore, is whether Monmouth County's alleged failure to ensure that plaintiff was evaluated by a medical doctor after the initial incident constitutes deliberate indifference.  The Court finds, considering the evidence in the light most favorable to plaintiff, that Monmouth County's alleged failure to ensure that plaintiff was evaluated by a medical doctor after the initial incident does not rise to the level of deliberate indifference.  No reasonable jury, thus, could find that Monmouth County's alleged failure to provide plaintiff with adequate medical care violated plaintiff's constitutional rights.

The record demonstrates that plaintiff received care immediately following the initial incident and was evaluated, at the very least, by a licensed nurse.  (<u>See</u> Pl. Br. at 3; Monmouth County Br. at 2; Jones Cert., Ex. K, 10-30-02 Condora Treatment Notes.)  Plaintiff was sent to the emergency room of CSMC immediately following the second incident.  (Monmouth County Br. at 3.)  Plaintiff also received consistent and extensive treatment and care from MCCI medical personnel for several weeks after these two incidents.  (<u>See</u> Jones Cert., Exs. M-W (indicating that plaintiff was examined and treated by MCCI

20

infirmary personnel seven times from October 31, 2002 to December 9, 2002).)  "[A] court will generally not find deliberate indifference when some level of medical care has been offered to the inmate." Christy v. Robinson, 216 F.Supp.2d 398, 413-14 (D.N.J. 2002).  Plaintiff's subjective dissatisfaction with the medical care he received does not itself indicate deliberate indifference.  See Hampton v. Holmesberg Prison Offs., 546 F.2d 1077, 1080 (3d Cir. 1976) (inmate's disagreement with medical personnel over the exercise of medical judgment is not deliberate indifference); Christy, 216 F.Supp.2d at 416 ("The Constitution does not guarantee that every prisoner will receive every type of treatment he desires, or even may need.").

Defendants are "accorded considerable latitude in the diagnosis and treatment of inmates." See Durmer, 991 F.2d at 67. In Estelle, the Supreme Court held that a prison's failure to order an X-ray of the plaintiff's back did not violate the Eighth Amendment, stating:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 106.  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of the Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quotations omitted).  The Court,

therefore, declines to question Monmouth County's medical judgment concerning plaintiff's treatment and specifically judgments relating to which medical personnel should have evaluated and treated him.

The Court, after drawing all inferences in favor of plaintiff, therefore finds that the evidence in the summary judgment record fails, as a matter of law, to demonstrate the type of deliberate indifference necessary to establish a violation of the Eighth Amendment.

## **CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant Monmouth County's summary judgment motion.  An appropriate order and judgment will be issued.

        <u>     s/ Mary L. Cooper     </u>
**MARY L. COOPER**
United States District Judge