<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
TYRONE BROWN,                 :
                              :    CIVIL ACTION NO. 02-5591 (MLC)
         Plaintiff,           :
                              :    **MEMORANDUM OPINION**
    v.                        :
                              :
MONMOUTH COUNTY SHERIFFS      :
DEPARTMENT OF CORRECTIONS &   :
MEDICAL DEPARTMENT, et al.,   :
                              :
         Defendants.          :
_____:
```

<u>**COOPER, District Judge**</u>

The defendant Universal Fitness Store, Inc. ("Universal") moves for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56(c).  The plaintiff <u>pro</u> <u>se</u>, Tyrone Brown, has not opposed Universal's motion.[1]  The Court, for the reasons stated herein, will grant Universal's motion.

<u>**BACKGROUND**</u>

The parties are familiar with the background of this action. (<u>See</u> 5-10-05 Mem. Op. & Ord., at 1-10.)  In a memorandum opinion and order dated May 10, 2005, the Court granted summary judgment in favor of the defendant Monmouth County Sheriff's Department of Corrections & Medical Department ("Monmouth County") because the plaintiff failed to demonstrate the requisite deliberate

---

[1] The return date on Universal's motion was November 21, 2005.  Therefore, pursuant to Local Civil Rule 7.1(d)(2), the plaintiff's opposition papers were due on or before November 7, 2005.

indifference to sustain a claim under the Eighth Amendment.  (Id. at 22.)

## DISCUSSION

### I.    Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for

trial." Anderson, 477 U.S. at 249. Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

If the non-movant fails to oppose the motion, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990); see also Damino v. Sony Music Entm't, 975 F.Supp. 623, 627 (D.N.J. 1996) (granting summary judgment because plaintiff's argument was unopposed, and thus no genuine issue of material fact was created). The motion is appropriately granted when that party is

entitled to judgment as a matter of law.  Anchorage Assocs., 922 F.2d at 175.

When, as here, "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support."  Carp v. Internal Revenue Serv., No. 00-5992, 2002 WL 373448, at *2 (D.N.J. Jan. 28, 2002) (citations and quotations omitted).  Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment."  Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8 (E.D. Pa. Mar. 1, 1989); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n.8 (E.D. Pa. June 20, 2000).

## II.  **Analysis**

The plaintiff alleges that Universal is the manufacturer or seller of the weight lifting machines, described as fifteen Paramount ST-4 Multi-Station Gyms, Cty, D.F. Mon. # 63920, one of which he was using when he sustained a head injury (the "bench press").  (Am. Compl., at 3.)  As such, the plaintiff claims that Universal is strictly liable for his injuries caused by (1) a defect in the bench press (specifically, a defect in one of the

4

bolts), and (2) inadequate warnings.  (<u>Id.</u>)  The plaintiff also
contends that Universal's production and sale of an unfit, unsafe
product used in a county or state facility (1) constitutes
deliberate indifference in violation of the Eighth Amendment's
prohibition against cruel and unusual punishment, and (2)
violates his rights to equal protection and due process of law
under the Fourteenth Amendment.  (<u>Id.</u>)

## A.   Plaintiff's Products Liability Claim

The plaintiff claims that Universal — as a manufacturer or
seller of the bench press and allegedly defective bolt — is
strictly liable for his injuries caused by (1) a defect in the
bench press bolt, and (2) inadequate warnings of said defect.
The New Jersey Products Liability Act ("NJPLA") provides for only
one cause of action for recovery for alleged harm caused by a
product.  Specifically, the NJPLA provides that

> [a] manufacturer or seller of a product shall be liable
> in a product liability action only if the claimant
> proves by a preponderance of the evidence that the
> product causing the harm was not reasonably fit,
> suitable or safe for its intended purpose because it:
> a. deviated from the design specifications, formulae,
> or performance standards of the manufacturer or from
> otherwise identical units manufactured to the same
> manufacturing specifications or formulae, or b. failed
> to contain adequate warnings or instructions, or c. was
> designed in a defective manner.

N.J.S.A. § 2A:58C-2.  A product liability action constitutes "any
claim or action brought by a claimant for harm caused by a
product, irrespective of the theory underlying the claim, except

5

actions for harm caused by breach of an express warranty."
N.J.S.A. §§ 2A:58C-1b(3), 2A:58C-8.  Also, "harm" includes (1)
personal physical illness, injury or death, and (2) pain and
suffering, mental anguish or emotional harm.  N.J.S.A. § 2A:58C-
1b(2).

The NJPLA applies to only product sellers and manufacturers.
The NJPLA defines "manufacturers" as

> (1) any person who designs, formulates, produces,
> creates, makes, packages, labels or constructs any
> product or component of a product; (2) a product seller
> with respect to a given product to the extent the
> product seller designs, formulates, produces, creates,
> makes, packages, labels or constructs the product
> before its sale; (3) any product seller not described
> in paragraph (2) which holds itself out as a
> manufacturer to the user of the product; or (4) a
> United States domestic sales subsidiary of a foreign
> manufacturer if the foreign manufacturer has a
> controlling interest in the domestic sales subsidiary.

N.J.S.A. § 2A:58C-2.  "Product seller[s]" include

> any person who, in the course of a business conducted
> for that purpose: sells; distributes; leases; installs;
> prepares or assembles a manufacturer's product
> according to the manufacturer's plan, intention,
> design, specifications or formulations; blends;
> packages; labels; markets; repairs; maintains or
> otherwise is involved in placing a product in the line
> of commerce.

Id.  "Product sellers" do not include:  (1) "a seller of real
property;" (2) "[a] provider of professional services in any case
in which the sale or use of a product is incidental to the
transaction and the essence of the transaction is the furnishing
of judgment, skill or services;" or (3) "[a]ny person who acts in

6

only a financial capacity with respect to the sale of a product."
Id.  The NJPLA states that a "product seller" shall be strictly
liable if the product seller:

> (1) has exercised some significant control over the
> design, manufacture, packaging or labeling of the
> product relative to the alleged defect in the product
> which caused the injury, death or damage; or

> (2) knew or should have known of the defect in the
> product which caused the injury, death or damage or the
> plaintiff can affirmatively demonstrate that the
> product seller was in possession of facts from which a
> reasonable person would conclude that the product
> seller had or should have had knowledge of the alleged
> defect in the product which caused the injury, death or
> damage; or

> (3) created the defect in the product which caused the
> injury, death or damage.

N.J.S.A. § 2A:58-C9.

The plaintiff alleges here that Universal, as the
manufacturer or seller of the bench press, is strictly liable for
his injuries caused by a defect in the machine.  (Am. Compl., at
3.)  However, other than the allegations in his amended
complaint, the plaintiff has not demonstrated a genuine issue of
material fact that Universal was in fact, the manufacturer or
"product seller" of the gym equipment.  Universal denies that it
is a manufacturer or products seller of the gym equipment as
those terms are defined in the NJPLA.  (Def. Ans., at 5; Carmen
Cacopardo Certif., at ¶¶ 3-4.)  Moreover, Monmouth County
admitted to mistakenly identifying Universal as the seller or
manufacturer of the gym equipment and bench press.  (Kathleen M.

7

Newsham Certif., at ¶ 2; Monmouth County Reply Br., at 1.)
Universal is not a manufacturer or a seller under the NJPLA
simply because it entered into a maintenance agreement with MCCI
to clean and service the weight room equipment located at the
facility through December 21, 2002.  Universal Underwriters Ins.
Group v. Pub. Serv. Elec., 103 F.Supp.2d 744 (D.N.J. 2000)
(stating that "[u]nder New Jersey law, actions based upon conduct
related to improper installation and maintenance of a product are
not subject to strict tort liability").

        Even if the Court were to find that Universal is a
manufacturer or product seller under the NJPLA, the plaintiff has
not rebutted Universal's showing, by providing any showing to the
contrary, that Universal did not (1) exercise any control over
the design, manufacture, packaging, or labeling of the bench
press or bolt, (2) know or should have known of the defect in the
bench press or bolt that caused the injury to the plaintiff's
head, (3) create the defect in the product which caused the
injury.  (See Dkt. entry no. 53, at Ex. B, C, & E.)  As such, the
plaintiff has not demonstrated that a genuine issue of material
fact exists which would preclude the Court from entering summary
judgment against him on his NJPLA strict-liability claim.
Therefore, the Court, after drawing all inferences in favor of
the plaintiff, holds that the summary judgment record fails, as a
matter of law, to demonstrate that Universal can be held strictly

liable, pursuant to the NJPLA, for any alleged defect in the bench press bolt.

**B.   Plaintiff's Section 1983 Claims**

    1.   Standard for Section 1983 Claims

    To recover against a defendant under 42 U.S.C. § ("Section") 1983, a plaintiff must establish that the defendant acted under "color of [state] law" to deprive him of a right secured by the federal Constitution or laws.[2]  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does not create substantive rights; rather, it provides an avenue of recovery for the deprivation of established federal constitutional and statutory rights.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Therefore, for the plaintiff's claim to survive Universal's prima facie showing of entitlement to summary judgment, there must be a genuine issue of material fact as to whether Universal (1) acted under color of state law; and (2) deprived the plaintiff of a federal right.  Groman, 47 F.3d at 633.

---

    [2] Section 1983 provides in relevant part that:

    Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.

"The color of state law . . . is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law."  Id. at 638.  The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State."  Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982).  For the conduct to be "fairly attributable" to the State, (1) the deprivation must be caused by (a) the exercise of some right or privilege created by the State or (b) by a rule of conduct imposed by it or by a person for whom it is responsible, and (2) the defendant must be a person who may fairly be said to be a state actor, either because the person (a) is a state official, (b) acted together with or has obtained significant aid from state officials, or (c) performed conduct otherwise chargeable to the State.  Id. at 936-39.

        2.   The State Action Requirement

    Although the plaintiff asserts due process, equal protection, and cruel and unusual punishment claims, his ability to present these claims against Universal — a private party — in federal court under the rubric of Section 1983 springs from the Fourteenth Amendment, which protects individuals against only wrongful "state action."  The Fourteenth Amendment's state-action requirement applies to any claim brought under Section 1983; thus, if a defendant's conduct satisfies the state-action

10

requirement of the Fourteenth Amendment, the conduct also constitutes action "under color of state law" for Section 1983 purposes.  Brentwood Acad. v. Tenn. Secondary Sch. Athletic Assoc., 531 U.S. 288, 295 n.2 (2001) (citation omitted); Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); Benn v. Universal Heath Sys., 371 F.3d 165, 169 n.1 (3d Cir. 2004).

The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when:  (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates as a willful participant in joint activity with the State or its agents; (4) a nominally private entity is controlled by an agency of the State; (5) a private entity has been delegated a public function by the State; or (6) the private entity is entwined with governmental policies, or the government is entwined in its management or control.  Brentwood Acad., 531 U.S. at 296 (internal quotations and citations omitted).  The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental

authority.  <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 621
(1991).

The conduct here that the plaintiff alleges violated his
constitutional rights is an alleged defect in a bolt in the bench
press and Universal's alleged failure to warn of said defect.
The plaintiff has not, however, articulated that the injuries he
suffered when the bench press bar struck his head should be
specifically designated as "state action" under any of the above-
articulated theories.  In fact, after thoroughly reviewing the
amended complaint, the only conceivable claim that the plaintiff
makes in support of state action is that Universal, as the
supplier or manufacturer of the alleged defective bench press, is
a state actor because it supplied the "defective" product to the
prison without adequate warnings.  However, as discussed above,
the plaintiff has not (1) rebutted Universal's showing that it
was not the manufacturer or supplier of the bench press, or (2)
made any alternative arguments as to state action based on
Universal's contract with MCCI to service its gym equipment.
Nevertheless, for the sake of completeness, the Court will
analyze whether Universal, through its contract with MCCI to
service the gym equipment and bench press at issue, is a state
actor for purposes of Section 1983 and the Fourteenth Amendment.

The Court, after applying the tests for state action
outlined above, finds that Universal was not acting as a "state

actor" in servicing and maintaining the gym equipment at MCCI.
First, there is no showing that MCCI coerced Universal into
servicing the gym equipment in a manner to deprive the plaintiff
of his constitutional rights.  Second, Universal did not act as
"willful participants in joint activity" with the State or its
agents.  There is nothing in the record indicating that Universal
acted with MCCI in servicing the equipment.  Instead, the service
records and the statements by Monmouth County in its
certifications indicate that Universal acted alone in performing
its monthly service.  Third, this case does not involve
"entwinement" as described in Brentwood, nor does the plaintiff
allege as such.  Fourth, this is clearly not a case in which
nominally private persons were controlled by an agency of the
State, and the plaintiff makes no such allegations.  Fifth, there
is no showing that MCCI and Universal had a "symbiotic
relationship."

A "symbiotic relationship" demands "a close association of
mutual benefit" between the state and the private entity.
Crissman v. Dover Downs Entm't, 289 F.3d 231, 240 (3d Cir. 2002);
see also Burton v. Wilmington Parking Auth., 365 U.S. 715, 723-26
(1961) (finding state action where mutually beneficial
relationship existed between city that owned parking structure
and restaurant to which it leased space).  Although Universal
arguably made a profit from its contract with MCCI, and MCCI

13

benefited by having Universal service its gym equipment, there is
no showing of a "symbiotic relationship" between Universal and
the State.

The conduct in question here — maintaining and servicing gym
equipment in a prison — is also arguably not a "public function"
that the MCCI delegated to Universal, a private entity.  The
Court, in addressing the "public function" issue, must determine
whether the challenged action relates to a function that has been
"traditionally the exclusive prerogative of the State."  Jackson
v. Metro. Edison Co., 419 U.S. 345 (1974).  A mere showing that a
private person performs a public function is not enough to
establish state action.  See Rendell-Baker, 457 U.S. at 842
(holding that the education of maladjusted children, while a
public function, is not the exclusive prerogative of the state);
Jackson, 419 U.S. at 353 (rejecting rule that businesses
"affected with the public interest" are state actors).

The Supreme Court has held that a private physician
contracting with a state to provide medical care to prisoners is
a state actor because the state owes prisoners a constitutional
duty to provide medical care.  West v. Atkins, 487 U.S. 42, 54-55
(1988).  In West, because the State had delegated its duty to a
private person — the defendant physician — the private person was
a state actor for purposes of Section 1983 liability.  Id.  Here,
prison officials must ensure that inmates, such as the plaintiff,

14

receive adequate food, clothing, shelter, medical care, and exercise.  Wilson v. Seiter, 501 U.S. 294, 304-05 (1991). Therefore, it is possible that by contracting out the maintenance of its gym equipment to Universal, MCCI was delegating to Universal a public function — maintaining the prison gym so that it is reasonably safe for use by its inmates.  However, even assuming that the Court would find Universal to be a state actor, the plaintiff has failed to demonstrate that Universal deprived him of a federal right.

> 3.   Eighth Amendment Claim

The plaintiff contends that Universal violated his Eighth Amendment right against cruel and unusual punishment by being deliberately indifferent to a known risk, i.e., manufacturing or selling a defective product without adequate warnings.  The Eighth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993). Moreover, the Eighth Amendment protects inmates, like the plaintiff, from "cruel and unusual punishment."  Rhodes v. Chapman, 452 U.S. 337, 345-46 (1981).

The Court applies a two-part test to determine whether Universal committed an Eighth Amendment violation based on inadequate prison conditions.  Farmer v. Brennan, 511 U.S. 825,

834 (1994).  The Court must determine whether there has been (1)
a sufficiently serious constitutional deprivation, and (2)
deliberate indifference by Universal.   Id.

     The Court need not address the first factor because there is
no showing in the summary judgment record to create genuine
issues of material fact as to whether Universal acted with
deliberate indifference regarding the allegedly defective bench
press bolt.  The test for "deliberate indifference" by prison
officials is a subjective test based on "what the prison official
actually knew."  Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d
Cir. 2001).  Thus, a prison official "must both be aware of facts
from which the inference could be drawn that a substantial risk
of serious harm exists, and he must also draw the inference."
Farmer, 511 U.S. at 837.  However, "an Eighth Amendment claimant
need not show that a prison official acted or failed to act
believing that harm actually would befall an inmate; it is enough
that the official acted or failed to act despite his knowledge of
a substantial risk of serious harm."  Id. at 842.  A plaintiff
can prove a defendant's knowledge of risk indirectly by
circumstantial evidence, and a fact-finder may conclude that a
prison official knew of a substantial risk from the very fact
that the risk was obvious.  Beers-Capitol, 256 F.3d at 131
(citations omitted).  Therefore, to survive summary judgment in a
prison conditions case, a plaintiff "must come forward with
evidence from which it can be inferred that the defendant-

16

officials were at the time the suit was filed, . . . knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." Id. at 132 (citation omitted).

The plaintiff here has made no showing that Universal knew that there was anything wrong with the bench press bolt and, thus, has failed to rebut a prima facie showing that Universal had no actual knowledge of a risk to his safety while exercising with the bench press. The plaintiff has failed to show, in particular, that Universal: (1) knew of long-standing substandard conditions associated with MCCI's exercise equipment, and in particular the bench press; (2) received complaints about the bench press malfunctioning because of a bolt breaking; (3) had actually serviced or repaired the bench press or bolt in question; (4) knew of prior accidents; or (5) knew of a general risk to prisoners in the plaintiff's position such that the risk of injury was obvious. The plaintiff, at most, alleges that Universal was negligent in its maintenance of the bench press. This alleged negligence does not rise to the level of deliberate indifference. The Court, after drawing all inferences in favor of the plaintiff, thus holds that the summary judgment record fails, as a matter of law, to demonstrate the type of deliberate indifference necessary to establish a conditions-of-confinement claim under the Eighth Amendment.

17

4.   <u>Fourteenth Amendment - Equal Protection</u>

The plaintiff asserts that his constitutional right to equal protection under the law has been violated because of Universal's conduct — failing to warn of a defective product (the bench press bolt).  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

Equal protection does not require that all people be treated alike; it requires only that all persons similarly situated be treated alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985); <u>see also</u> <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) ("[T]he purpose of the [E]qual [P]rotection [C]lause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.").  The level of judicial scrutiny applicable to an equal protection claim depends on the type of classification.  Suspect and quasi-suspect classifications require heightened scrutiny, often referred to as "strict scrutiny."  <u>City of Cleburne</u>, 473 U.S. at 439.  On the other hand, "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."  <u>Heller v. Doe</u>, 509 U.S. 312

18

(1993).  "Such a classification cannot run afoul of the Equal
Protection Clause if there is a rational relationship between the
disparity of treatment and some legitimate governmental purpose."
Id. at 320.

     To the extent the plaintiff has alleged a cognizable equal
protection claim, the Court will apply rational-basis review to
his claim.[3]  To bring a successful claim under section 1983 for a
denial of equal protection under the Fourteenth Amendment when
the plaintiff does not allege membership in a suspect class or
interference with a fundamental right, the plaintiff must show
that he has been intentionally treated differently from others
similarly situated and that there is no rational basis for the
difference in treatment.  See Olech, 528 U.S. at 564 (2000).
Therefore, to sustain an equal protection claim the plaintiff

_____

     [3] The plaintiff neither (1) specifies how his constitutional
right to equal protection has been violated, nor (2) alleges the
distinction upon which he was being discriminated against by
asserting that (a) he is a member of a suspect class, or (b)
Universal deprived him of a fundamental right.

     The plaintiff's equal protection challenge implicates
neither a suspect classification nor a fundamental right.
Prisoners are not a suspect class.  Myrie v. Comm'r, N.J. Dep't
of Corr., 267 F.3d 251, 263 (3d Cir. 2001); Abdul-Akbar v.
McKelvie, 239 F.3d 307, 317 (3d Cir. 2001); Artway v.
Scheidemantel, No. 87-2131, 1988 WL 150823, at *2 (D.N.J. Nov.
21, 1988).  Also, although prisoners do have a right to exercise,
and assuming for purposes of this discussion that this is a
fundamental right, the plaintiff has not, and could not, allege
that Universal deprived him of said right.  Nothing in the record
indicates that the actions of Universal or MCCI interfered with
the plaintiff's right to exercise.

must show that he was similarly situated to, and treated differently from, other inmates.  <u>Tillman v. Lebanon County Corr. Facility</u>, 221 F.3d 410, 424 (3d Cir. 2000); <u>Johnson v. Horn</u>, 150 F.3d 276, 284 (3d Cir. 1998); <u>Keenan v. City of Phila.</u>, 983 F.3d 459, 465 (3d Cir. 1992).  Here, the plaintiff neither alleges nor provides any showing that he was treated differently from other inmates.  As such, the plaintiff has failed to demonstrate a genuine issue of material fact exists to support denying summary judgment as to his equal protection claim.  Thus, the Court, after drawing all inferences in favor of the plaintiff, finds that the summary judgment record fails, as a matter of law, to demonstrate that Universal's alleged actions deprived him of equal protection of the law.

### 5.   Fourteenth Amendment - Due Process

The plaintiff claims also that Universal violated his right to due process of the law because Universal distributed a defective product without adequate warnings.  The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  <u>Id.</u>  The Due Process Clause protects individuals against two types of government action.

> So-called substantive due process' prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty.  When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must

20

> still be implemented in a fair manner.  This
> requirement has traditionally been referred to as
> procedural due process.

United States v. Solerno, 481 U.S. 739, 746 (1987) (citations and

internal quotations omitted).  Procedural due process is a

flexible requirement and "calls for such procedural protections

as the particular situation demands."  Mathews v. Eldridge, 424

U.S. 319, 334 (1976) (citation omitted).

Similar to the plaintiff's equal protection claim, he fails

to specify in his amended complaint how Universal violated his

constitutional right to due process.  The plaintiff has also not

alleged or shown conduct by Universal that "shocks the

conscience" of the Court or that "interferes with rights implicit

in the concept of ordered liberty."  The plaintiff has further

not shown that Universal interfered with his liberty or property

interests within the meaning of the Fourteenth Amendment.  The

plaintiff's claim of a "failure to warn" that a product was

unreasonably dangerous when sold — here, the bench press and bolt

to MCCI — "without warning him of an alleged defect is purely a

creature of state tort law; there is no constitutional or federal

right not to be injured by defective or dangerous products."

See, e.g., Abdul-Ahad v. Top Tobacco Co., No. 99-4067, 1999 WL

967514, at *2 (N.D. Ill. Oct. 6, 1999).  Thus, Universal has met

its burden of showing that no genuine issue of material fact

exists with respect to the plaintiff's due process claims.  The

plaintiff has failed to identify any genuine, material factual issues related to this claim that would defeat Universal's motion for summary judgment.  Therefore, the Court, after drawing all inferences in favor of the plaintiff, finds that the summary judgment record fails, as a matter of law, to demonstrate that Universal's alleged actions denied the plaintiff due process of law.

<u>**CONCLUSION**</u>

The Court, for the reasons discussed <u>supra</u>, concludes that the plaintiff has failed to demonstrate the merits of his (1) products liability claim, (2) Eighth Amendment claim, and (3) Fourteenth Amendment claims.  Accordingly, the Court will grant Universal's motion and enter judgment in its favor.  The Court will issue an appropriate order and judgment.

<u>   s/ Mary L. Cooper   </u>
**MARY L. COOPER**
United States District Judge

22